## CIRCUIT COURT OF ARLINGTON COUNTY

Willie C. Branca

v.

Northern Va. Doctors Hospital et al.

February 18, 1981

Case No. (Law) 21951

By JUDGE CHARLES S. RUSSELL

Having given careful consideration to the oral arguments, memoranda and authorities submitted by counsel, I have concluded that the Pleas in Bar raising the defense of the Statute of Limitations should be sustained as to the defendants, Northern Virginia Doctors Hospital and Dr. Rickerich.

The Motion for Judgment alleges that Dr. Rickerich treated the plaintiff beginning February 2, 1978. In answering Requests for Admissions, the plaintiff admits that she had not received any "treatment or care" from Dr. Rickerich after February 22, 1978. The Motion for Judgment further alleges that in the course of her treatment, the plaintiff was fitted with a surgical stocking which caused what the plaintiff believed to be vascular damage, as a proximate result of which she developed a gangrenous condition in her right foot, which culminated in a partial amputation thereof on June 21, 1978. The Statute of Limitations was tolled by the filing of the plaintiff's Notice of Claim pursuant to Code Section 8.01-581.2, on May 23, 1980. This action was instituted on August 28, 1980. Thus the last date of treatment by Dr. Rickerich was more than two years before the filing of the Notice of Claim, but the actual amputation of the foot occurred within the two year period.

Dr. Rickerich contends that Virginia has adopted the "continuing treatment" rule, in which it is held that

> When malpractice is claimed to have occurred during a continuous and substantially uninterrupted course of examination and treatment. . . the date of injury occurs, the cause of action for that malpractice accrues, and the Statute of Limitations commences to run when the improper course of examination and treatment, if any, for the particular malady terminates.

*Farley* v. *Goode*, 219 Va. 969 (1979); *Fenton* v. *Danaceau*, 220 Va. 1 (1979). Thus the defendants contend that the bar of the Statute fell on February 22, 1980, two years after the last day of treatment by Dr. Rickerich, and that the Notice of Claim was filed over three months late. Plaintiff concedes that the statutes begin to run, in personal injury cases, when the wrong is done rather than when it is discovered or discoverable. However, plaintiff points to a line of cases which have in recent years developed the principle that in a personal injury case the statute does not begin to run until the plaintiff is actually hurt, even though the negligent act or omission of the defendant which caused the injury may have considerably preceded the injury in point of time. In *Sides* v. *Richard Machine Works, Inc.*, 406 F.2d 445 (4th Cir. 1969), Judge Bryan, writing for the United States Court of Appeals for the Fourth Circuit, applying Virginia law, held in January, 1969, that a plaintiff's right of action for personal injury, caused by the derailing of a defectively manufactured locomotive, accrued at the time he was injured, not at the much earlier date when the locomotive was designed or built. Later the same year that decision was approved by the Virginia Supreme Court in *Caudill* v. *Wise Rambler, Inc.*, 210 Va. 11 (1969), in which a plaintiff sued for personal injuries sustained by reason of a defect in the steering mechanism of an automobile. There suit was brought within two years from the time of her injury, but more than two years from the date the car was purchased. The Supreme Court held that the essential elements of a good cause of action, whether based on tort or contract are:

1. A legal obligation of a defendant to a plaintiff.

2. A violation or breach of that duty, and
3. A resulting injury or damage to the plaintiff.

In the absence of all three elements, no cause of action exists and the plaintiff cannot sue. It follows that the cause of action does not accrue and the statute of limitation does not commence to run until the plaintiff sustains an injury. Sometimes, however, the actual effect upon the plaintiff may be so insidious as not to be perceived until much later. When this occurs, the statute began to run from the onset of the injurious effect, whether it is known, discoverable by due diligence, unknown or unknowable. *Hawks* v. *DeHart*, 206 Va. 810, and *Street* v. *Consumers Mining Corporation*, 185 Va. 561. The applicable Statute of Limitations, as amended in 1977, brings the statute law into clear harmony with these decisions.

> In every action for which a limitation period is prescribed, the cause of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person. . . and not when the resulting damage is discovered. (Code. Sec. 8.01-230, as amended.)

The plaintiff argues, for the purpose of this plea:

> As long as Mrs. Branca had two feet she was not injured and, indeed, could not have sued for the loss of the foot until the foot was in fact lost. (Plaintiff's Memorandum in Opposition, page 2.)

However, this argument is at variance with the Motion for Judgment, which alleges that because of the defendants' negligence the plaintiff was fitted with a surgical stocking which caused her great pain and suffering and caused alleged vascular damage to her feet; (paragraph 3); that she repeatedly complained to the defendants as to this, but her complaints were not heeded; (paragraph 4); that as a direct and proximate result thereof she developed a gangrenous condition in her right foot; (paragraph 5); and that the amputation of her foot was:

the direct and proximate result of an ongoing and continuing disease and injurious process initiated on February 3, 1978, by the defendants jointly and severally culminating with the amputation of plaintiff's foot as aforesaid on June 21, 1978. (paragraph 6).

The foregoing makes it apparent that the plaintiff actually complains of negligent care and treatment by Dr. Rickerich from February 3, 1978, until February 22, 1978, resulting in pain, vascular damage and the onset of gangrene. The amputation is. not alleged to be the injury directly resulting from the negligence laid to the defendant. Rather it is subsequent treatment resorted to in an effort to minimize the hazard of the injury complained of. Indeed, the plaintiff appears in paragraph 6, quoted above, to take the position that the "ongoing and continuing disease and injurious process," proximately caused by the defendants' alleged negligence, actually began as early as February 3, 1978, which was the first day of treatment rather than the last.

It thus appears that this case is one in which the injurious effect upon the plaintiff is alleged to have occurred at the very time the treatment was being rendered by the defendant physician, even though undiscovered until a later time, and thus governed by *Hawks* v. *DeHart* and *Street* v. *Consumers Mining Corporation, supra*, rather than a case in which negligent acts are alleged which had no injurious impact upon the plaintiff until long after they were complete, as in *Caudill* v. *Wise Rambler, Inc.*, and *Sides* v. *Richard Machine Works, Inc., supra*.

Northern Virginia Doctors Hospital has filed Plea in Bar based upon the same defense of the Statute of Limitations. Since the plaintiff alleges that all applicable negligence was joint and several as to all defendants, the same reasoning must apply as that which covers the Plea in Bar of Dr. Rickerich. The only factual difference between the two defendants' positions appears to be that care and treatment rendered by the hospital terminated on February 14, 1978, eight days earlier than the termination of the care by Dr. Rickerich (answer to Dr. Rickerich Request for Admissions, Number 4). This Plea will also be sustained.