# CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Carol Wright,
Administratrix
of the Estate
of Latonya P. Wright,
deceased

v.

Eli Lilly & Co. et al.

September 21, 2004

Case No. (Law) 03-2891

BY JUDGE MARK S. DAVIS

This matter is before the Court on the Special Plea of the Statute of Limitations of defendants Churchland Psychiatric Associates, Inc., and E. Daniel Kay, M.D., as well as a Motion to Limit Recovery by the same parties. The factual and procedural background for these motions, discussion of the issues, and conclusions are set forth below.[1]

---

[1] Plaintiff Wright was represented at the May 14, 2004, hearing by Phillip Marsteller, Jr., Esq., of Emroch & Kilduff, L.P. Also present with Mr. Marsteller was Mark E. Burton, Jr., Esq., of Hersh & Hersh in San Francisco, California. Kay and CPA were represented by Rodney S. Dillman, Esq., of Hancock, Daniel, Johnson & Nagle, P.C. Maryview was represented by Deborah S. Holroyd, Esq., of Goodman, Allen & Filetti, P.L.L.C. Lilly was represented by Brent L. Van Norman, Esq., of Hunton & Williams. Also present with Mr. Van Norman was Gay Parks Rainville of Pepper Hamilton, L.L.P., in Philadelphia, Pennsylvania. Magier and

## I. *Factual and Procedural Background*

Plaintiff, Carol Wright (" Wright" or "plaintiff"), Administratrix of the Estate of Latonya P. Wright (" decedent") filed her Motion for Judgment on November 7, 2003, against Eli Lilly and Company (" Lilly"), Astrazeneca Pharmaceuticals, L.P. (" Astrazeneca"), Psychiatric Associates of Chesapeake (" PAC"), Igor Magier, M.D. (" Magier"), Maryview Medical Center (" Maryview"), Churchland Psychiatric Associates, Inc. (" CPA"), and E. Daniel Kay, M.D. (" Kay"). The first two of the above-listed defendants are pharmaceutical manufacturers, while the latter five are health-care providers.

The motions for decision here involve defendants CPA and Kay. In Count Fifteen of her Motion for Judgment, plaintiff alleges that Kay was the agent, servant, and employee of CPA, acting within the scope and during the course of his employment with CPA while treating the decedent from August 31 to September 2, 2001. Paras. 1 & 2. Plaintiff further alleges that Kay negligently diagnosed, treated, and cared for the plaintiff's decedent, including but not limited to negligently prescribing the drug Zyprexa, negligently monitoring the effect of the drug Zyprexa, and was otherwise negligent. Para. 3. Plaintiff also alleges that as a direct and proximate result of Kay's negligence, the decedent died on November 23, 2001. Para. 4. Plaintiff qualified as the Administratrix of the estate of decedent on January 29, 2002. Para. 8.

Maryview[2] filed its Grounds of Defense on November 25, 2003. CPA and Kay filed a Grounds of Defense, Special Plea of the Statute of Limitations, and Motion to Limit Recovery on December 2, 2003. Lilly filed its Grounds of Defense on December 10, 2003. Magier and PAC filed their Grounds of Defense on December 19, 2003.

On December 19, 2003, Lilly filed a Notice of Filing Notice of Removal indicating that it had filed a Notice of Removal in the United States District Court for the Eastern District of Virginia. Wright filed a motion to remand in the removed action to this Court, and, in an Opinion and Order dated March 22, 2004, U.S. District Court Judge Henry Coke Morgan granted Wright's motion and remanded the case to this Court.

---

PAC were represented by Coreen A. Bromfield, Esq., of Rawls & McNelis. While Astrazeneca had not filed a Grounds of Defense or other responsive pleading at the time of the hearing, Christopher D. Lagow of LeClair Ryan was present to observe the proceedings. The Court notes the need for a Rule 1A:4 motion and certification before it can formally act on any *pro hac vice* admission requests for foreign counsel. *See Wellmore Coal Corp. v. Hartman Mining Corp.*, 264 Va. 279, 281, 568 S.E.2d 671, 671-72 (2002).

[2] Maryview asserts in its Grounds of Defense that it was improperly named in the Motion for Judgment and that its proper name is Maryview Hospital. *See* Va. Code ∍ 8.01-6.

The Special Plea of the Statute of Limitations and the Motion to Limit Recovery were argued on May 14, 2004, and the Court requested briefs from the parties. These motions have now been fully briefed and are ripe for decision.

## II. *Discussion*

The Court will first address the standard utilized in deciding the Special Plea and then address the Special Plea. The Court will then address the Motion to Limit Recovery.

### A. *Special Plea*

#### 1. *Standard for Consideration of Special Plea*

A special plea of the statute of limitations is a defensive pleading that reduces the litigation to a single issue which, if proven, creates a bar to the plaintiff's right of recovery. *Cooper Industries v. Melendez*, 260 Va. 578, 594, 537 S.E.2d 580, 595 (2000). Because CPA and Kay have filed a Special Plea of the Statute of Limitations, they bear the burden of establishing the defense. *Id.* at 594, 537 S.E.2d at 594. No evidence was presented at the hearing on the special plea. Therefore, for purposes of the Special Plea, this Court deems true those facts stated in the plaintiff's Motion for Judgment. *Lostrangio v. Laingford*, 261 Va. 495, 544 S.E.2d 357 (2001). The plaintiff's responses to requests for admission of CPA and Kay have been submitted, and the Court will also consider those responses as supplements to the facts alleged in the Motion for Judgment.

#### 2. *Contentions of Parties*

Plaintiff Wright filed her Motion for Judgment on November 7, 2003. She alleges in her Motion for Judgment that CPA and its "agent, servant, and employee" Kay provided medical treatment to the decedent from August 31, 2001, through September 2, 2001. Count Fifteen, Paras. 1-2. Defendants CPA and Kay allege in their Special Plea that the Motion for Judgment was filed more than two years after their last medical treatment of the decedent and that this suit is therefore barred by Va. Code § 8.01-243. Defendants CPA and Kay filed an additional brief in support of their Special Plea on July 7, 2004. In their brief, CPA and Kay contend that this action is a wrongful death action, pursuant to Va. Code § 8.01-50 *et seq.*, based upon alleged medical malpractice under Va. Code § 8.01-581.1 *et seq.* Defendants CPA and Kay

contend that the two-year statute of limitations applicable to medical malpractice actions, beginning to run *upon defendants' last treatment of the decedent,* controls in this case; while the plaintiff contends that the two-year statute of limitations applicable to wrongful death actions, beginning to run *upon death,* controls in this case. Defendants CPA and Kay further argue that at least one Virginia Circuit Court directly addressed this issue, holding that the Virginia Supreme Court's decision in *Wertz v. Grubbs,* 245 Va. 67, 425 S.E.2d 500 (1993), mandates that a wrongful death action based upon medical malpractice is controlled by the statute of limitations applicable to medical malpractice actions. *Merritt v. Clark,* 40 Va. Cir. 13 (1995).

Plaintiff Wright filed her responsive brief on July 21, 2004. She states that her decedent last received treatment from defendants CPA and Kay on September 2, 2001; that her decedent died on November 23, 2001, "from complications related to the alleged actions and omissions of drug manufacturer, Eli Lilly and various healthcare providers;" and that she filed her action within two years of her decedent's date of death as required by Virginia Code § 8.01-244. Plaintiff reads the Virginia Supreme Court's decision in *Wertz* just the opposite of defendants CPA and Kay and contends that Va. Code § 8.01-244(B) subjects all wrongful death actions to a two-year limitation period, regardless of whether they arise out of medical malpractice. Plaintiff also contends that, as long as her decedent died before expiration of the two-year limitation period for personal injuries, she would have an additional two years from such death to bring a wrongful death action. In support of her contention, plaintiff cites a Virginia Circuit court decision reaching the opposite holding of *Merritt* and finding that a wrongful death action may be brought within two years of the decedent's *death,* if the decedent could have brought a personal injury action but died before doing so within the two-year personal injury limitation period. *Goodwin v. Salsano,* 39 Va. Cir. 362 (1996).

### 3. Statute of Limitations

Because of the apparent confusion in applying the statutes of limitation at issue in this case and because of the split in authority on this issue, it is important to review the principles governing statutory bars to Virginia proceedings.

There are three types of statutory bars to proceedings at law in Virginia.[3] John L. Costello, *Virginia Remedies,* § 7.6(a) (2d ed. 1999). These three types

---

[3] There are four types of statutory bars to proceedings in equity, including the three statutory bars at law and laches. John L. Costello, *Virginia Remedies,* Ə 7-6(a) (2d ed. 1999).

of statutory bars were reviewed by the Virginia Supreme Court in *Commonwealth v. Owens-Corning Fiberglas Corp.*, 238 Va. 595, 598-99, 385 S.E.2d 865, 867 (1989), and described as: (1) procedural or "pure" statutes of limitation, (2) substantive or "special" statutes of limitation, and (3) statutes of repose.

The description in *Owens-Corning*, 238 Va. at 598-99, 385 S.E.2d at 867, of the types of statutes of limitation appears to differ somewhat from the Virginia Supreme Court's prior description of all statutes of limitation as statutes of repose. *See Street v. Consumers Min. Corp.*, 185 Va. 561, 575, 39 S.E.2d 271, 277 (1946). However, this is not surprising in light of the way in which many courts have historically used the terms "statute of limitations" and "statute of repose" interchangeably. *See* Martin P. Burks, T. Munford Boyd, William M. Koontz, *Common Law and Statutory Pleading and Practice*, § 230 (4th ed. 1952) (citing *Templeman v. Pugh*, 102 Va. 441, 445, 46 S.E. 474, 475 (1904), and explaining the view that statutes of limitation are in reality statutes of repose because they compel exercise of a right of action within a reasonable time, rather than creating a mere presumption of satisfaction). This view of statutes of limitation as statutes of repose is also explained by Professor Bryson in his text, *Virginia Civil Procedure*, p. 245 (3d ed. 1997).

There is one general category of pure statutes, which is the most common type of statute of limitation. Costello, *supra*, § 7-6(b). These pure statutes of limitation serve to limit the period during which a claim may be successfully asserted. Therefore, while expiration of these periods does not extinguish the underlying claim, the period within which such claims may be asserted is limited. The personal injury statute of limitation contained in Va. Code § 8.01-243 has been characterized as a pure statute of limitation. *Haynes v. Hagerty*, 25 Va. Cir. 478, 481 (1991) (" time limitations established in that statute begin to run when the particular cause of action accrues" and "[a]ssertion of a remedy is procedurally barred after the time expires" ).

There are two categories of special statutes of limitation, both of which limit the life of the claim, not merely the time within which it may be brought: (1) statutes of repose, and (2) new rights statutes. Costello, *supra*, §§ 7-6(a) and 7-6(c). Justice Russell, in *Owens-Corning Fiberglas*, noted that the time limitations of statutes of repose begin to run from some legislatively selected point in time which is unrelated to the accrual of any cause of action or right of action, whether accrued or yet to accrue. *Owen-Corning Fiberglas*, 238 Va. at 599, 385 S.E.2d at 867. As for new rights statutes, Justice Russell described them as statutes that generally create new rights (rights not known at common law) and become elements of the newly-created right, restricting its availability. *Id*. The Virginia wrongful death statute is an example of such a

statute, since the action under the statute survives for only the length of the stated period of time and then it is extinguished despite the fact that the claim has not been addressed. Costello, *supra*, § 7-6(c)(1).

In analyzing the application of the statutory bars to proceedings, it is important to understand the distinction between rights of action and causes of action since these phrases are used in such discussions. Costello, *supra*, § 7-6(g). Justice Russell described the relationship as follows:

> A cause of action is the operative set of facts giving rise to a right of action. It accrues when a wrongful act or breach of duty occurs, even though actual damage may not occur until a later date. A right of action accrues to a person when he sustains damage or injury therefrom.

*Harbour Gate Owner's Assoc. v. Berg*, 232 Va. 98, 105, 348 S.E.2d 252, 257 (1986).

In reviewing Virginia case law addressing the application of statutes barring proceedings at law, it is also important to keep in mind that from 1919 to 1977 the remedial right of action in personal injury cases began to expire within a specified number of years after the right to bring the action had accrued. Va. Code § 8-13; Va. Code 1919, § 5810; Costello, *supra*, § 7-6(h). The relevant part of the revisions of 1977 became Va. Code § 8.01-243(A), and provided that every action was to be brought within two years after the "cause of action" accrues. This language referencing a "cause of action" rather than a "right of action" was also used from 1977 to 1996 in the general provision relating to accrual, at Va. Code § 8.01-230. The revisions of 1996 amended Va. Code § 8.01-230 to provide that a "right of action shall be deemed to accrue and the prescribed limitation period shall begin to run ... from the date the injury is sustained in the case of injury to the person. . . ." Costello, *supra*, § 7-6(h).

The current version of Va. Code § 8.01-230 provides that "[i]n every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person. . . ." Accordingly, the time limit of a Virginia statute of limitation begins to run when the cause of action accrues to the plaintiff. *See* Bryson, *supra*, p. 255.

Finally, the Court notes that in describing the purpose of such statutes, Professor Friend commented in his text, *Personal Injury Law in Virginia*, that:

> The object of statutes of limitations is "to compel the exercise of a right of action within a reasonable time," ... to prevent surprise

and to avoid problems incident to the gathering and presentation of evidence when claims have become stale. *Truman v. Spivey*, 225 Va. 274, 279, 302 S.E.2d 517, 519 (1983).

Charles E. Friend, *Personal Injury Law in Virginia*, § 12.1 (3d ed. 2003).

### 4. *Medical Malpractice*

Where a patient claims injury by the wrongdoing of a health care provider, a right of action may lie in negligence for such injury. *See Lyons v. Grether*, 218 Va. 630, 633, 239 S.E.2d 103, 105 (1977). The plaintiff in this case asserts personal injury to her decedent as a result of medical malpractice constituting negligence. Such medical malpractice actions in Virginia are governed by the provisions of the Virginia Medical Malpractice Act, Va. Code § 8.01-581.1 *et seq.*, which applies to tort actions for medical malpractice.

At the heart of this dispute is the limitation period applicable on the facts alleged. Medical malpractice actions are personal injury actions in negligence, and therefore the general limitation period applicable to personal injury negligence actions applies to a pure medical malpractice action. *See Deasy v. Hill*, 833 F.2d 38, 40 (1987), *see also Castillo v. Emergency Medical Assocs., P.A.*, 372 F.3d 643, 651-52 (4th Cir. 2004) (applying personal injury statute of limitations to medical malpractice claim). Va. Code § 8.01-243(A) provides that "[u]nless otherwise provided in this section or by other statute, every action for personal injuries, whatever the theory of recovery, and every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." Therefore, the language of the statute clearly provides that a claim of medical malpractice against a health care provider is a personal injury action and the two-year statute of limitation applies to such action. Accordingly, had plaintiff's decedent lived and wished to recover for alleged medical malpractice of CPA and Kay, she would have to file her claim of medical malpractice within two years of the accrual of her cause of action, assuming her cause of action accrued prior to her death.

Personal injury actions are governed by the "pure" statute of limitations in Va. Code § 8.01-243, as noted above in the general discussion of statutes of limitation. The negligence/medical malpractice cause of action, in effect, comes into being when the medical malpractice occurs, but the right of action does not accrue until the injury is sustained. Therefore, the accrual of the limitations period for personal injury focuses on the fact of injury, however slight, as a means of fixing the first date on which a right of action exists, and

hence the starting point for the statutory limitations period. *St. George v. Pariser*, 253 Va. 329, 333, 484 S.E.2d 888, 890 (1997); Kent Sinclair and Leigh B. Middleditch, Jr., *Virginia Civil Procedure*, § 4.9[K] (4th ed. 2003). The plaintiff's right to sue accrues when she has been injured, not when she discovered or should have discovered the injury. *Richmond Redevel. & Housing Auth. v. Laburnum Constr. Corp.*, 195 Va. 827, 838, 80 S.E.2d 574, 580-81 (1954); *Brenca v. Northern Va. Doctors Hosp.*, 5 Va. Cir. 19 (1981). The general rule is modified in cases of continuous services or relationships. *Grubbs v. Rawls*, 235 Va. 607, 611, 369 S.E.2d 683, 686 (1988); Va. Code § 8.01-243. That is not an issue in this case.

Plaintiff alleges that Kay negligently diagnosed,[4] treated, and cared for her decedent, negligently prescribed Zyprexa, and negligently monitored the effects of Zyprexa on the decedent and that, as a proximate result of such negligence, the decedent died. It is not completely clear from the pleadings whether the plaintiff alleges that her decedent suffered injury prior to the date of death or at the time of death. However, it is clear that plaintiff alleges the decedent's death resulted from medical malpractice of defendants CPA and Kay. While this lack of clarity could present an obstacle to our analysis had more than two years passed since the treatment at issue, *see Lo v. Burke*, 249 Va. 311, 316-17, 455 S.E.2d 9, 12-13 (1995), it does not appear to be an issue for purposes of the statute of limitations analysis since the time period between the treatment and death was less than two years.

Since the decedent died within two years of the date of her treatment by the health-care provider defendants and thus before any period of limitation on her personal injury claim could have expired, her personal representative now seeks to proceed with the action in the wrongful death context.[5] CPA and Kay, presuming that the injury occurred and the right of action accrued prior to November 7, 2001, contend that the decedent's personal representative was required to file such cause of action within two years of the accrual of decedent's personal injury medical malpractice cause of action, rather than two years from the date of death.

## 5. *Effect of Death*

---

[4] When a medical malpractice claim in Virginia is based on a misdiagnosis or failure to diagnose theory, the "injury" is the development of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment, and in order for a health care provider to carry its burden on a statute of limitations plea it is required to show with reasonable medical certainty that the injury occurred more than two years before the lawsuit was filed. *St. George v. Pariser*, 253 Va. 329, 484 S.E. 2d 888 (1997); Kent Sinclair & Leigh B. Middleditch, Jr., *Virginia Civil Procedure*, э 4.9[C] (4th ed. 2003).

[5] While the Motion for Judgment does not delineate Count Fifteen as a wrongful death cause of action, the death is alleged to have occurred as a result of the medical malpractice/negligence of CPA and Kay.

Because CPA and Kay contend that the claims against them are barred and because conflicting authority on this issue exists, the Court will review the general effects of death on a decedent's claims. Va. Code § 8.01-25 provides that:

> Every cause of action whether legal or equitable, which is cognizable in the Commonwealth of Virginia, shall survive either the death of the person against whom the cause of action is or may be asserted, or the death of the person in whose favor the cause of action existed, or the death of both persons. . . .

Provided, further, that, if the cause of action asserted by the decedent in his lifetime was for a personal injury and such decedent dies as a result of the injury complained of with a timely action for damages arising from such injury pending, the action shall be amended in accordance with the provisions of § 8.01-56.

Va. Code § 8.01-56, in turn, provides that:

> The right of action under § 8.01-50 shall not determine, nor the action, when brought, abate by the death, dissolution, or other termination of a defendant; and when a person who has brought an action for personal injury dies pending the action, such action may be revived in the name of his personal representative. If death resulted from the injury for which the action was originally brought, a motion for judgment and other pleadings shall be amended so as to conform to an action under § 8.01-50, and the case proceeded with as if the action had been brought under such section. In such cases, however, there shall be but one recovery for the same injury.

Therefore, a decedent's cause of action survives his death, whether or not it is related to the death. If it is related, it becomes a wrongful death claim. If it is not related, it is said to survive.

To fully understand the effect of death on the surviving cause of action, one must look to Va. Code § 8.01-229(B)(1) and (5), which provide that "[t]he death of a person entitled to bring an action ... shall toll the statute of limitations as follows:"

(B)(1) If a person entitled to bring a personal action dies with no such action pending before the expiration of the limitation period for commencement thereof, then an action may be commenced by the decedent's personal representative before the expiration of the limitation period including the limitation period as provided by subdivision E3 or within one year after his qualification as personal representative, whichever occurs later.

(B)(5) If a person dies before a personal cause of action which survives would have accrued to him, if he had continued to live, then an action may be commenced by such decedent's personal representative before the expiration of the applicable limitation period or within one year after the qualification of such personal representative, whichever occurs later.

Therefore, if a "cause of action" arises in favor of any person during that person's lifetime, such "cause of action" will survive that person's death and may be commenced by the decedent's personal representative before the expiration of the *applicable limitation period* or within one year after the qualification of the personal representative, whichever occurs later. Professors Sinclair and Middleditch express it as follows:

If the decedent is injured and subsequently dies from other causes, the wrongful death proceeding does not exist. In this event, a personal injury proceeding may be brought by the personal representative, but any recovery is for the decedent's estate rather than the wrongful death statutory beneficiaries. ... Such personal injury actions ... survive the death of ... the decedent.

Sinclair & Middleditch, *supra*, § 2.11; *Tucker v. Ware*, 10 Va. Cir. 454, 456 (1988); *Orne v. Kendrick*, 6 Va. Cir. 136, 138 (1984). However, if the death is due to the same injury which is the subject of a pending personal injury action, the pending action is converted to one for wrongful death. Friend, *supra*, § 15.1(B).

This survival action places no limitation on the damages that can be recovered and it is an asset of the decedent's estate (rather than an amount that inures to the benefit of designated statutory beneficiaries), and any amounts recovered are subject to the payment of the deceased's debts. *Bagley v. Weaver*, 211 Va. 779, 180 S.E.2d 686 (1971); Friend, *supra*, § 15.1(B).

There may also be cases where death occurs and the personal representative is unsure whether the death is related to the pending cause of

action. Professors Sinclair and Middleditch comment in their text that "[a]lthough the personal representative may not know whether the decedent died of the injuries received or from other causes, it is doubtful that a wrongful death action and an action pursuant to § 8.01-25 may be joined. *Edward v. Jackson*, 210 Va. 450, 171 S.E.2d 854 (1970). *Cf. El-Meswari v. Washington Gas & Light Co.*, 785 F.2d 483, 490 (4th Cir. 1986), holding that § 8.01-25 defers to the wrongful death statute as the exclusive statement of grievances Virginia will recognize when a tort victim dies of his injuries. *Accord Anderson v. Fleming*, 6 Va. Cir. 208 (1985)." Sinclair & Middleditch, *supra*, § 2.11, n. 134. However, the Court notes that in *Tucker*, 10 Va. Cir. at 456-57, and *McGuin v. Mount Vernon Nursing Center Assocs.*, 44 Va. Cir. 453, 455 (1998), the courts reached contrary conclusions to Professors Sinclair and Middleditch on this point.

Having reviewed the survivability of causes of action upon an unrelated death and noting that, in the present case, plaintiff alleges that the medical malpractice/negligence *resulted* in her decedent's death, we will now consider how the Virginia wrongful death statute applies to the plaintiff's allegations and the statute of limitations plea of CPA and Kay.

### 6. *Wrongful Death*

At common law, there was no "right of action" for the death of a person. *Wilson v. Whitaker*, 207 Va. 1032, 154 S.E.2d 124 (1967); Friend, *supra*, § 15.1. Therefore, if a cause of action, such as personal injury based upon medical malpractice, arose during a person's lifetime, it was extinguished by his death. *Id.* This common law rule was altered in 1871 by statute in Virginia. The original Virginia act was modeled upon the English statute known as Lord Campbell's Act. *Id.*; *Lawrence v. Craven Tire Co.*, 210 Va. 138, 169 S.E.2d 440 (1969). The current version of that statute, Va. Code § 8.01-50(A), provides that "[w]henever the death of a person shall be caused by the wrongful act, neglect, or default of any person or corporation ... and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action ... and to recover damages in respect thereof, then, and in every such case, the person who, or corporation ... which, would have been liable, if death had not ensued, shall be liable to an action for damages ... notwithstanding the death of the person injured. . . ."

The plaintiff alleges that the medical malpractice causing her decedent's death preceded the death by less than three months, rather than coinciding with the death. However, the decedent died before filing a personal injury action based upon the malpractice alleged in the motion for judgment. Va. Code § 8.01-56 provides that the "right of action under § 8.01-50 shall not ...

abate by the death … of a defendant." As reviewed above, and as Professor Friend notes, "an action arising during the decedent's lifetime for injuries which subsequently cause the decedent's death is, in effect, transformed into a wrongful death action by Virginia Code § 8.01-56." Friend, *supra*, § 15.1. Therefore, in Virginia today, there can be only one recovery for an injury that causes death, and that recovery belongs to the decedent's next of kin as specified in the wrongful death statute. *Id.* Such action may begin as a personal injury action and be converted to a wrongful death action upon the related death, or such action may begin as a wrongful death action upon death where no personal injury action is pending.

That brings us to the question of when the wrongful death action must be filed. Va. Code § 8.01-50(B) provides that "[e]very such action under this section shall be brought by and in the name of the personal representative of such deceased person within the time limits specified in § 8.01-244." Va. Code § 8.01-244(A), in turn, provides that "[n]otwithstanding the provisions of § 8.01-229(B) [the survival limitation periods], if a person entitled to bring an action for personal injury dies as a result of such injury with no such action pending before the expiration of two years next after the cause of action shall have accrued, then an action under § 8.01-50 may be commenced within the time limits specified in subsection B of this section." In relevant part, Va. Code § 8.01-244(B) goes on to provide that "[e]very action under § 8.01-50 shall be brought by the personal representative of the decedent within two years after the death of the injured person." This is a special statute of limitations in the sub-category described above as a "new rights" statute of limitations that creates new rights (the wrongful death action) and establishes the period within which such action must be asserted, in this case, two years from the date of death.

The claims asserted against CPA and Kay in Count Fifteen are medical malpractice claims of negligence under the wrongful death statute. In *Deasy*, 833 F.2d at 40, the Court recognized that a medical malpractice claim is a personal injury action and can be converted to a wrongful death action after death takes place. As the Court noted in *Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991), the Virginia Wrongful Death statute does not create a new "cause of action" but only a "right of action" in a personal representative to enforce the decedent's claim for any "personal injury" that caused death.[6] Therefore, the use of the term "personal injury" in Va. Code § 8.01-244(A) appears to include a medical malpractice claim asserted as a personal injury

---

[6] The "right of action" given by the Virginia wrongful death statute is not a survival of the "right of action" which existed in the injured person prior to death, but an independent "right of action," created and not merely continued by the statute. *Beavers v. Putnam*, 110 Va. 713, 67 S.E. 353 (1910).

claim. Unless the cases to the contrary, as cited by defendants, lead us to a different conclusion, the plain language of the statutes discussed above provides that the plaintiff's claim must be filed within two years of the decedent's death.

### 7. Conflicting Cases

As just reviewed, unlike a wrongful death action, an action for personal injuries/medical malpractice in Virginia is subject to the limitation imposed by Va. Code § 8.01-243, which requires that such actions be brought within two years after a cause of action accrues. Defendants contend that the plaintiff's suit must have been brought within two years of its accrual under Va. Code § 8.01-243, citing *Merritt*, 40 Va. Cir. 13, while plaintiff contends that the suit must have been brought within two years of death under Va. Code § 8.01-244, primarily citing the language of the statute and *Goodwin*, 39 Va. Cir. 362. We now turn our attention to these cases and the statutes.

In *Merritt* the court addressed this issue, *but did not specifically review the application of Va. Code § 8.01-244(B)*. The plaintiff in *Merritt* filed a two-count motion for judgment. The first count was for wrongful death and the second count was for medical malpractice. Rather than analyzing the alternate theories separately, the *Merritt* court apparently concluded that, since the statutory periods governing medical malpractice and wrongful death actions are in conflict, the medical malpractice statute should govern because it addressed the limitation-period question more specifically. *Merritt*, 40 Va. Cir. at 15. However, without additional facts from the case, it is difficult to know the exact basis for the *Merritt* court's ruling.

In *Goodwin*, 39 Va. Cir. at 363, the court specifically addressed the application of Va. Code § 8.01-244 to facts similar to those in this case. In that case, the plaintiff first saw defendant Dr. Salsano on December 8, 1992, and defendant Dr. Dahm on December 14, 1992. *Id*. He died on January 6, 1994. The motion for judgment was filed December 4, 1995. *Id*. Defendants argued that the plaintiff's cause of action for medical malpractice accrued at the latest on December 1, 1993, when the decedent's colon cancer was diagnosed, and that his suit was barred by the statute of limitations because the suit was filed on December 4, 1995, more than two years after the accrual of the action. *Id*. In addressing defendants' contention, the *Goodwin* court quoted the Virginia Supreme Court's description of Va. Code § 8.01-244, in *Lo v. Burke*, 249 Va. 311, 316, 455 S.E.2d 9, 12 (1995), as providing, "in material part, that a wrongful death action may be brought by the decedent's personal representative within two years after the death of the injured person, if the decedent was entitled to bring an action for personal injury but died, with no

such action pending, before the expiration of two years after the cause of action accrued." *Goodwin*, 39 Va. Cir. at 363. The *Goodwin* court concluded that "it is clear that the decedent died within two years of the cause of action accruing" and it "is further true that this wrongful death action was brought within two years of the decedent's death." *Id.* Accordingly, the court overruled the defendant physicians' special pleas of the statute of limitations.[7]

In addition to *Merritt*, defendants CPA and Kay contend that the Virginia Supreme Court's decision in *Wertz* is controlling and that it requires this Court to grant their special pleas because, "[a]s set forth in *Wertz*, plaintiff's two claims for both medical malpractice and wrongful death may not co-exist, and the provisions for medical malpractice therefore control this action." Defendants' Memorandum of Law, p. 3. While defendants are correct in noting that the *Merritt* court found the *Wertz* decision controlling, this Court cannot reach the same conclusion. In finding that the medical malpractice statute of limitations and the wrongful death statute of limitations are in conflict, the *Merritt* court held that *Wertz* required it to apply the more specific medical malpractice statute of limitations. Recognizing that this Court only has the facts cited in the *Merritt* opinion, the *Merritt* court's conclusion seems to ignore the fact that the *Wertz* Court recognized that persons may seek damages for "personal injury *or wrongful death* arising out of medical malpractice. . . ." *Wertz*, 245 Va. at 71, 425 S.E.2d at 502 (emphasis added). Furthermore, the *Wertz* Court very clearly described the conflict between the limiting and tolling provisions of the Virginia Medical Malpractice Act and the Virginia Wrongful Death Act, while the *Merritt* court seemed to assume there was a direct conflict. However, application of the plain language of the limitations period in the two acts does not result in a direct conflict, as it did in *Wertz*. The medical malpractice review panel limiting and tolling provisions at issue in *Wertz* are not at issue here. In fact, Va. Code § 8.01-244(A) specifically contemplates the existence of a cause of action at the time of death and seeks to address that scenario. It is illogical to suggest that the General Assembly would have assumed the limitation period applicable to the underlying cause of action would control where it was specifically adopting a limitation period for the statutorily-created wrongful death right of action. Friend, *supra*, § 15.3 (reaching this same conclusion by reference to the statute).

As noted above at the conclusion of this Court's discussion of the wrongful death statute's application to this case, *see supra*, Part II.A.5, applying the "plain language" rule to the statute at issue, it is clear that the

---

[7] In *Tucker v. Ware*, 10 Va. Cir. 454, n. 3 (1988), a case not cited by the parties, the court found that, where no action for damages was pending at the time of decedent=s death, a wrongful death action may be brought within two years of such death.

plaintiff has timely filed her action. In order to resolve the apparent conflict between *Merritt* and *Goodwin*, this Court must simply rely upon the plain language of the statute. The Virginia Supreme Court recently said that:

> It is firmly established that, in determining the meaning of a statute, we must consider the plain language that the General Assembly used when the statute was enacted. Thus, "where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed." *Barr v. Town & Country Properties*, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting *Watkins v. Hall*, 161 Va. 924, 930, 172 S.E. 445, 447 (1934)).

*Johnson v. Windsor Insur. Co.*, 268 Va. 196, 201, 597 S.E.2d 31, 34 (2004). The cases cited by CPA and Kay, particularly *Merritt* and *Wertz*, do not change this Court's view of the plain meaning of the statutory language. Since there is no conflict between the statutes at issue here and because the Court finds *Goodwin* and the other cases reviewed above more persuasive than *Merritt*, the statutes control. Applying the plain language of Va. Code § 8.01-244, the Court denies the special plea of CPA and Kay.[8]

## B. *Motion to Limit Recovery*

### 1. *Contentions of the Parties*

Defendants CPA and Kay filed a Motion to Limit Recovery, requesting that this Court enter an Order reducing the $5,000,000.00 *ad damnum* clause in the motion for judgment to the statutory medical malpractice damages cap of $1,600,000.00 pursuant to Va. Code § 8.01-581.15. Noting numerous cases in which the medical malpractice cap was held constitutional, the defendants

---

[8] The Court notes that, if the plaintiff had alleged that her decedent=s un-filed personal injury action accrued before November 7, 2001, and that her death was unrelated to such personal injury, in essence asserting a survival action, then defendants CPA and Kay would have well-founded concerns regarding the statute of limitations. This same explanation may account for the holding in *Merritt*, 40 Va. Cir. 13.

contend that the Court should reduce the *ad damnum*, rather than waiting until after a verdict is returned and reducing such verdict, if necessary, to the cap.[9]

Plaintiff contends that the proper method of addressing this issue is for the Court to permit the *ad damnum* to remain at $5,000,000.00 and order a post-verdict remittitur, if necessary, after the jury has assessed damages. Plaintiff contends that several Virginia court decisions support its position.

### 2. *Application of Cap*

The Virginia General Assembly, in 1976, established a maximum recovery limit applicable to each injured patient in a medical malpractice action. *Etheridge v. Medical Center Hospitals*, 237 Va. 87, 93-94, 376 S.E.2d 525, 527-28 (1989). Defendants CPA and Kay contend that the Virginia Supreme Court has found constitutional the statutory cap on medical malpractice damages and that therefore this Court must reduce the *ad damnum* in this case since it exceeds the cap. Plaintiff argues that the duty of the Court is to apply the law to the facts; that the medical malpractice cap is a remedy; that a remedy is a question of law and not fact; and that the Court should apply the remedy of the cap only after the jury (as fact-finder) has reached a verdict.

The Virginia Supreme Court addressed the constitutionality of Va. Code § 8.01-581.15 and its limitation on recoverable damages in *Etheridge*. In that case, the Court considered a medical malpractice plaintiff's contention that "legislation may not override the findings of a jury by prescribing an absolute limit upon the amount of damages, irrespective of the facts and the jury verdict." *Id.* at 95, 376 S.E.2d at 528. The Court went on to note that the "province of the jury is to settle questions of fact, and, when the facts are ascertained, the law determines the rights of the parties." *Id.* at 96, 376 S.E.2d at 529. Furthermore, the Court stated that "the jury's fact-finding function extends to the assessment of damages. Once the jury has ascertained the facts and assessed the damages, however, the constitutional mandate is satisfied. Thereafter, it is the duty of the court to apply the law to the facts." *Id.* (citations omitted).

The *Etheridge* Court went on to conclude that:

---

[9] Defendants PAC and Magier also filed a Motion to Limit Recovery in this matter. Although plaintiff=s Memorandum in Opposition references the motion of PAC and Magier, it was only the Motion to Limit Recovery filed by CPA and Kay that was noticed for hearing and argued on May 14, 2004. Accordingly, the Court does not address the PAC/Magier motion. Furthermore, because defendant Lilly did not notice or argue such motion, the Court will not address that portion of plaintiff=s Memorandum addressing application of the medical malpractice cap to Lilly.

> The limitation on medical malpractice recoveries contained in Code § 8.01-581.15 does nothing more than establish the *outer limits of a remedy* provided by the General Assembly. A remedy is a matter of law, not a matter of fact. *A trial court applies the remedy's limitation only after the jury has fulfilled its fact-finding function.* Thus, Code § 8.01-581.15 does not infringe upon the right to a jury trial because the section does not apply until after a jury has completed its assigned function in the judicial process.

(Citations omitted; emphasis added.) In describing the trial of the underlying case, the *Etheridge* Court stated that:

> In the present case, the jury resolved the disputed facts and assessed the damages. Wilson, therefore, was accorded a jury trial as guaranteed by the Virginia Constitution. *Once the jury had determined the facts, the trial court applied the law and reduced the verdict in compliance with the cap prescribed by the General Assembly in Code § 8.01-581.15. By merely applying the law to the facts, the court fulfilled its obligation.* Accordingly, the remedy prescribed by the General Assembly did not infringe upon Wilson's right to a jury.

*Etheridge*, 237 Va. at 96-97, 376 S.E.2d at 529 (emphasis added).

The language of *Etheridge* appears to comport with the plaintiff's contention as to how the cap should be applied, as a *remedy* by the Court after the jury has concluded its fact-finding damages assessment.

### 3. Conflicting Authority

Notwithstanding the language of *Etheridge*, there is a split in authority among Virginia circuit courts on this issue. At least two Virginia Circuit Courts reached the same conclusion urged by defendants CPA and Kay. In *Dupont v. Winchester Medical Center, Inc.*, 1993 WL 946308 (Warren County Cir. Ct. 1993), a defendant physician filed a motion to reduce the *ad damnum* in the case to the medical malpractice cap and the court granted the motion. However, the Court did not analyze the statute, other than to note that the *Etheridge* Court found the statute constitutional. In *Moyers v. Steinmetz*, 34 Va. Cir. 307, 311 (1994), the court similarly observed, without analysis, that "there can be no recovery against nurse Steinmetz in excess of $1,000,000.00, and the Motion to Reduce the ad damnum to $1,000,000.00 is granted."

Conversely, several Virginia circuit courts have reached the conclusion urged by the plaintiff. In *Bennett v. Riverside Regional Medical Center*, 43 Va. Cir. 13 (1997), the court addressed this issue by reviewing the holding in *Etheridge*. After recognizing that the Virginia Supreme Court in *Etheridge* described assessment of damages as a determination of fact and the application of the cap as a remedy and therefore a determination of law for the court, the *Bennett* court denied the defendant's motion to reduce the *ad damnum*. *Id*. In doing so, the *Bennett* court stated: "[w]hile the gravamen of the plaintiff's claim in *Etheridge* was that the medical malpractice cap is unconstitutional, and the above language is *dicta*, this court finds the decision persuasive as to the jury's role in the determination of damages." *Bennett*, 43 Va. Cir. at 14.

This Court questions whether the referenced language of *Etheridge*, addressing the distinction between the jury's fact-finding role and the Court's role in applying the remedy available under the law, is *dicta*. The Virginia Supreme Court has described *dicta* as: "opinions of a judge which do not embody the resolution or determination of the court and, made without argument or full consideration of the point, are not the professed deliberated determinations of the judge himself." *Harmon v. Peery*, 145 Va. 578, 583, 134 S.E. 701, 702 (1926), *see Newman v. Newman*, 42 Va. App. 557, 566, 593 S.E.2d 533, 538 (2004) (" *[d]icta* in a prior decision generally refers to that portion of an opinion 'not essential' to the disposition in the case" ). In *Etheridge*, the Virginia Supreme Court was called on to determine the constitutionality of the medical malpractice cap, and, in doing so, it applied the intermediate level of constitutional scrutiny. *See Dell v. French*, 38 Va. Cir. 91, 104 (1995). When conducting the intermediate level of scrutiny, a court is called upon to make a "searching inquiry." *United States v. Popa*, 187 F.3d 672, 676 (D.C. Cir. 1999); *Long Island Lighting Co. v. Cuomo*, 666 F. Supp. 370, 413 (N.D. N.Y. 1987). One of plaintiff's contentions in *Etheridge* was that she was deprived of her right to a jury trial because the medical malpractice cap overrode the findings of the jury. *Etheridge*, 237 Va. at 95, 376 S.E.2d at 528. Therefore, the Court's "searching" discussion of the distinction between the jury's role in determining facts and the judge's role in applying the law was essential to its conclusion that the plaintiff was accorded a jury trial as guaranteed by the Virginia Constitution. Because the "searching" discussion was essential to the ruling, it was not *dicta* and this Court is bound by its conclusions.

In *Benson v. Lowe*, 44 Va. Cir. 85 (1997), this issue was also addressed in the context of a defendant's motion to reduce the suit's *ad damnum* and to preclude the plaintiff from informing the jury of the amount requested in the *ad damnum*. After reviewing the language cited above from *Etheridge*, as well

as the language of Va. Code § 8.01-379.1 providing that any party to a civil action may inform the jury of the amount of damages sought, the *Benson* court concluded:

> Section 8.01-379.1 allows the plaintiff in *any* civil action to inform the jury of the amount of *damages sought*, not damages recovered nor damages recoverable. Section 8.01-379.1 applies notwithstanding the medical malpractice liability cap. Further, § 8.01-379.1 allows a plaintiff to plead an *ad damnum* clause larger than what the plaintiff, by way of oral argument, requests from a jury. Thus, even assuming *arguendo* that the language of the medical malpractice liability cap restricts the amount of the *ad damnum* clause, the language of § 8.01-379.1 would permit a plaintiff, notwithstanding this cap, to (1) plead an *ad damnum* larger than what the plaintiff ultimately requests, and (2) to tell the jury the amount of its *ad damnum* clause.

*Benson*, 44 Va. Cir. at 87. Similarly, in *Dell v. French*, 38 Va. Cir. 91, 100 (1995), the Court considered this issue and concluded:

> The Court does not agree with the Defendants that, as to the counts of the Motion for Judgment sounding in medical malpractice, the *ad damnum* clauses should be reduced to $1,000,000.00 at the demurrer stage. "A trial court applies the remedies' limitation [i.e., the Medical Malpractice Cap] only *after* the jury has fulfilled its fact-finding function." *Etheridge v. Medical Center*, 237 Va. 87, 96 (1989) (emphasis in original). Hence, the appropriate procedure is to submit the case to the jury without informing the jury of the limit on recovery. Should the jury return a verdict in excess of the Medical Malpractice Cap, the trial judge will reduce the award to the amount of the Medical Malpractice Cap. Of course, should Count IV and V survive a motion to strike at trial, special verdict forms will have to be employed because the Plaintiff's recovery, if any, under those counts is not subject to the Medical Malpractice Cap.

Accordingly, the *Dell* Court denied the defendants' motion in that case. *See also Morris v. Commonwealth*, 46 Va. Cir. 216, 223 (1998) (reviewing order in which medical malpractice remedy statutes should be applied).

Perhaps some confusion regarding the appropriate procedure in applying the cap has resulted from the different standard applied in the federal courts. For example, in *Paul v. Gomez*, 190 F.R.D. 402, 403 (W.D. Va. 2000), the court noted the split in authority among Virginia circuit courts and went on to apply the federal standard. After noting that, under federal procedure, an *ad damnum* serves no practical purpose because the court must award the full relief to which the plaintiff is entitled regardless of the state of the pleadings, the court went on to strike those amounts sued for that were in excess of the medical malpractice cap. *Id.* The *Paul* court also noted that, while Virginia law permits a party to tell the jury the amount of damages sought by the plaintiff, no such right exists in federal court, even in a diversity case. *Id.* The same result was reached in *Tabor v. Sutherland*, 2001 U.S. Dist. LEXIS 6324, *2 (W.D. Va. 2001), where the court noted that while an argument could be made that the medical malpractice cap statute "only requires the court to reduce any excessive verdict and does not preclude an action that seeks a greater amount, the better course is to strike any claim for an amount above the cap as immaterial under Federal Rule of Civil Procedure 12(f)."

This Court believes that the Virginia Supreme Court's analysis in *Etheridge* requires it to deny the defendants' Motion to Limit Recovery and reduce the *ad damnum*. While this Court does not believe the *Etheridge* language was *dicta, see supra*, even if it was, this Court finds the *dicta*, and analysis contained in the circuit court cases urged by plaintiff much more persuasive than the conclusions of the circuit court cases supporting defendants' position. Accordingly, the defendants' motion is denied.

While this Court recognizes the incongruity between allowing plaintiff to tell the jury that she seeks an amount that is clearly in excess of the statutory cap, that incongruity is for the legislature to address, if it so chooses, not for this Court.

### III. *Conclusion*

The Special Plea of the Statute of Limitations of defendants CPA and Kay is denied. The Motion to Limit Recovery of defendants CPA and Kay is also denied. The briefs addressing the motions decided in this Opinion and Order are ordered filed. The objections to motions decided in this Opinion and Order, as stated in the pleadings and briefs and at oral argument on the record, are preserved and exceptions are noted on such basis. The Court therefore dispenses with the Rule 1:13 counsel endorsement requirement. It is so ordered.